Case number 09-1463, people v. Jermaine Ross. Okay, would the lawyers please approach and introduce yourself. My name is Christopher Kocas and I'm from the State Appellate Defender's Office. I represent Jermaine Ross. Assistant State's Attorney Noah Monaghan. You understand that you have 15 minutes, you have to reserve some time for rebuttal. Okay, let's proceed. May it please the Court, my name is Christopher Kocas and I represent the defendant Jermaine Ross. I'd like to reserve a couple minutes for rebuttal. In our brief, we raised three arguments for the reversal of Mr. Ross' conviction for armed provisional criminal. Today, I'd like to focus my arguments on Issue 1 regarding the sufficiency of the evidence of possession and Issue 2 regarding the Second Amendment. As to the first issue, Mr. Ross was convicted of the offense of armed provisional criminal under a theory of constructive possession of a handgun. The State in this case failed to prove beyond reasonable doubt the essential element that Mr. Ross had knowledge of the handgun. According to the State's witnesses, Mr. Ross was seen leaving the driver's seat of a parked car. I mean, that knowledge you're talking about can be constructive knowledge, can it? The possession itself can be constructive, but one of the elements is knowledge, and the State has to prove that element beyond reasonable doubt. And here, there are a number of factors. I mean, how did they fail here? I mean, this handgun, the butt of the gun was in the back seat, was it? It was in the back seat. Police officers saw it from outside the vehicle in the back seat. This particular defendant had control over the car for that period of time? Correct. The gun was in plain view to the officer, but very importantly, it was not in plain view to the defendant from his position in the driver's seat. It was behind the driver's seat with only the butt of the gun exposed. But wasn't that like that case that the State cited where the passenger was in the front and he could easily reach? So how do you distinguish that one? This one is very different. In that case, Ingram, the defendant was in the passenger seat, and that seat was broken, and so it was reclined, and so he himself was practically in the back seat next to the gun. In this case, the gun is completely behind the driver's seat, and so both out of his plain view and not within his easy reach. And so critically, that's what makes this case distinguishable from Ingram's. But can you really say that a reasonable trier of fact couldn't infer that if you're driving a car or if you're in a car that you no longer have the ability to view something that's in the back seat of the same car? Well, certainly that's one factor that you have control over the car. But the courts have made clear that the fact that you have control over the car isn't enough. If you look at Hampton, a case that's cited in our brief, they make that point. And if you look at another case, Bailey, that was one where the gun was underneath the passenger seat. And so the fact that he was in the car was not enough. It's also important to note here that this was not Mr. Ross's car. This car belonged to his girlfriend, and that's an important factor. Why is that important? She testified that that morning she was dropped off at work by him. The only thing that had been in the back seat was a baby seat. There was no gun in the car when she left him with it. But he was routinely using her vehicle to take her to work, wasn't he? Yes, he did routinely use the car to take her to work. But if he owned the car, that would lend greater weight to the State's case that he had knowledge of what would be inside his own car. When you borrow a car from someone else, you're not as likely to look inside the car and know exactly what contents are there. It's important that the gun was wedged between the back seat and a bag, and there was no evidence. The State presented nothing to show that that bag belonged to Mr. Ross, that the items inside that bag belonged to Mr. Ross. Had the State presented such evidence, that would have strengthened its case. It's important that there were no fingerprints, no statements by Mr. Ross indicating knowledge of the gun. There was no evidence that he made any gestures or movements toward the gun, as has happened in some other cases. As an Ingram, the defendant ignored a demand to stop, and so there's evidence of his flight. What about him leaving the car? Didn't the trial court sort of consider that as flight and left it running or something? The State's evidence was that he left the car running, but that's not necessarily evidence of flight. There's no evidence that the officers were pursuing him at that time. The question isn't necessarily whether it is or isn't, but can a trial court infer that it is? It's very weak evidence, and certainly the evidence is there and it can be considered. But in terms of proving the defendant's knowledge, it's not very strong evidence. Do you want to go into some of the other arguments? Sure. For those reasons, we would ask that you reverse this conviction pursuant to Argument 1. With respect to Argument 2, in Heller and McDonald, the United States Supreme Court held that the Second Amendment confers an individual right to bear arms. The court explained that this right extends to the core lawful purpose of self-defense. All right, yeah. Does it apply to felons? Do you think that it should apply to felons? Yes, particularly nonviolent felons such as Mr. Ross. The two convictions that he had here were delivery of a controlled substance, which in no way indicate... Do you think the world will be a better place if the felons all have guns? Well, I think that... And they have the right to have them? What do you think? I think that we have the Second Amendment, and the U.S. Supreme Court has found that that's a fundamental right. But in all those cases, McDonald and, I mean, just about every case, Heller, you name it, they all say that that doesn't affect the laws that prohibit felons from having guns. Well, actually, what the court says in both cases, they have essentially one line, that nothing in the opinion should be taken to cast doubt on those longstanding prohibitions. And these presumptively lawful regulatory measures are listed only as examples. And so that was an issue that was not briefed before the court. And we don't know from this one sentence. Well, what the sentence says, if we want to quote, nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and mentally ill or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings or laws imposing conditions on the commercial sale of arms. Correct. So you're saying that didn't mean that the court was trying to say that this opinion doesn't address... It simply was saying we're not addressing that? Or what does this mean about longstanding prohibitions? Casting doubt. It says nothing from our opinion should cast doubt. So what does that... You raise an excellent point. There's a lot of ambiguity, a lot of unknowns from that one statement from the court. Why is that an ambiguity? It seems pretty clear to me that they're telling you that felons are not supposed to possess guns. Isn't that what they're saying? They're saying that they're presumptively lawful. And they're also describing them as regulatory measures. So they're not talking about criminal offenses. And they're presumptively lawful suggests that there's some sort of scrutiny that would be involved. It doesn't suggest that there's a... It doesn't say that there's a categorical exclusion for all time for all people convicted of felonies. You gave one argument in your brief that I found very interesting. You said somewhere in there that if the Constitution doesn't say it, then it isn't so. I don't recall quite the quote. But essentially, I mean, there's nothing in the Constitution. Right. In other words, the Constitution prohibits felons from voting, but it doesn't prohibit them from carrying guns. Correct. And if we look at... But how about the Supreme Court, United States Supreme Court? Aren't they supposed to interpret the Constitution? Isn't that Marbury case? Yes. Isn't that what this is all about? Yes. And so what the Supreme Court has said so far is that the Second Amendment operates like any other constitutional right in the Bill of Rights. And of those rights, there is no right that felons are categorically excluded from for all time. After Heller and McDonald, they said that we made clear in Heller our holding does not cast doubt on such longstanding regulatory measures as prohibitions on the possession of firearms by felons. We repeat those assurances here. Despite municipal respondents' doomsday proclamations, the corporation does not imperil every law regulating firearms. Correct. What were they trying to say there? I think, again, I think it's a little ambiguous, but I think they're trying to assure people that the floodgates aren't going to be opened for every regulation involving guns being struck down. Well, what do we do with Dawson then? Should we simply ignore it? It's the first district decision. It's kind of shot down your argument today, hasn't it? Well, Dawson, in some ways it is. In some ways it's distinguishable. In Dawson, that dealt with the aggravated UUW statute. And one important difference is that that statute contains an exception for possessing weapons inside your home or abode. And this armed habitual criminal statute is much, much broader. But you can't have, doesn't the aggravated UUW forbid felons from having guns in their homes? Yes, there is that provision. And that provision wasn't at issue in Dawson. And so we have a little bit of a different case here. Yes. It's in a car. Yes. All right. And so we would argue that Dawson first was wrongly decided, but it's also distinguishable. Here we have the armed habitual criminal statute creating a Class X felony. Aside from murder, it's the highest class of felony in Illinois for the mere possession of a firearm. And in Heller and McDonald, they made it very clear that the purpose of self-defense is at the core of this right. And the armed habitual criminal statute criminalizes the mere possession of a firearm, regardless of the purpose of self-defense. And so under Heller and McDonald, the armed habitual criminal statute cannot stand. Yes, but you see the difference is here we're talking about somebody who's committed two felonies. Correct. See, that's different from the citizen out there who's protecting himself. Well, again, Mr. Ross, we would argue, has the same right under the Second Amendment to protect himself, to carry a weapon for the lawful purpose of self-defense. I don't know if he has those rights once he commits two felonies anymore. Well, we don't know from the United States Supreme Court just yet. What the court said is that we don't intend, neither in Heller nor McDonald, to lay out the entire jurisprudence on the Second Amendment. There will be time enough to do that. And so the case that we're arguing today is one of these cases where we're addressing some of these issues left completely unanswered, unbriefed. We have one sentence that we're working from as sort of a way to predict what the U.S. Supreme Court is going to do. Well, would you hang your hat on that if you're a convicted felon and you have a gun in a car, that that's quite different than a convicted felon who has a gun in his home or where he lives? It is different. I would like to point the court to a case that was decided yesterday. I apologize. Today I hope to file a motion to cite this case, but there is a case, Aguilar, that was decided yesterday, and Justice Neville, in dissent, said he would strike down the UUW statute. He made the same point that I'm making today, that the right to self-defense extends outside the home. So the majority said to the Congress. Correct. The majority held what was done in Dawson and then Williams. But it was a home case. It wasn't a car case. Correct. But I believe it was outside the home in Aguilar. Oh, all right. So it's more similar to Dawson? Yes, yes. I believe so. All right. And so looking at what Justice Neville said, the right to self-defense obviously needs to happen outside the home just as often, if not more often, than inside the home. But to address what Justice Gordon asked you, it's your position that the Second Amendment would permit possession of a gun in a home, regardless of whether that person had, say, given up that right by being convicted of multiple forcible felonies over a course of time? At least for nonviolent felons, such as Mr. Ross. There's a different argument to be made that a person abuses his Second Amendment right when he commits violent felonies. How do you come up with this distinction that two or three felonies that are, what you're saying, not forcible, would be where we draw the line? Certainly, if you look at the case of Dijon. If the legislature had intended that, then they would have excluded controlled substances, would they have not? Well, we're not talking about the legislature right now. We're talking about the Second Amendment. Okay. So that's a constitutional right that we're interpreting here. And where there is no provision for excluding felons, it's important that we take a close look at that and give it some heightened level of scrutiny as we do other statutes that address or affect our constitutional rights in the Bill of Rights. Okay. We understand what you're saying. And so in sum, because the armed habitual criminal statute criminalizes the conduct that's at the very core of the Second Amendment, we would ask that this Court reverse Mr. Ross's conviction. Before you start, I wanted to make a comment that the third panel member, Justice Cahill, is not here today, but he's going to listen to the tape and he's going to be involved in the decision-making process. Thank you. Good morning. May it please the Court, Your Honors, Counsel, Mr. Ross. This is the State's Attorney, Noah Montague, on behalf of the people in this matter. Your Honors, this matter is here before the Court because in January 2009, this defendant was found in his girlfriend's car at the intersection of West End and Central on the west side of Chicago. He was alone in the car. A gun was in plain view on the backseat of the car. When police officers approached, he fled the car. He walked away from the car with the key in the ignition and the car running. And police officers stopped and saw the gun and found then that he had had multiple felony convictions, including two convictions for delivery of a controlled substance. He was charged under the armed and harmed habitual criminal statute. The gun itself, though, was the testimony that it was just sitting out or was the testimony that it was sandwiched in between something? The testimony was that the officer walked up to the backseat, looked through the window, and could see the butt of the gun sticking out so that the gun was on top of the backseat and that a bag of some kind is over the barrel of the gun. And Mr. Ross was away from the car at that point? At that point, well, yes, because he was in the car when the officers approached, and he walked away from the car as the officers approached. So one officer stopped Mr. Ross, and the other officer walked up to the car and looked into the window. What about these other people that were allegedly there, his son and some other fellow? What's the chronology of that? Well, the chronology of that, Your Honor, is what the officers testified to. And it's important to note that the defendant is actually arguing that he should have de novo review here. He's saying that the defense presented at trial should just be completely abandoned. And the people obviously objected to de novo review. It should not apply in a case where even today we are still at issue on a factual dispute, the fact of knowledge. So the Jackson v. Virginia standard should apply. But in the light most favorable to the people under that Jackson v. Virginia standard, what the officers testified to was that there were only two people present at that intersection, defendant in the car, and defendant in the car was sitting in the car, and he was approached by one other pedestrian who was heard to solicit narcotic sales. He was saying rocks, clothes, common street terms for narcotics. He walked up to defendant's car. And at this point, the officers were approaching. The pedestrian turned and saw the officers approaching and walked away from defendant's car. Defendant then turned himself, saw that this is a marked squad car with two officers in full uniform, turned and saw the police officers, and that's when he got out and walked out of the car. According to the officers' testimony, the occurrence witness that testified for the defendant was not there. The defendant's son was not there. So that is really the chronology and the facts that we are dealing with in this case. And the people would obviously just briefly address in the first issue that the defendant's knowledge of this gun was proven beyond a reasonable doubt. And it's clear because, one, he was in the car by himself, but he wasn't just in the car by himself. The girlfriend testified that she gave him permission to use the car and that he was the only one given permission to use the car. And she testified, as Your Honor noted, that there was nothing in that back seat except for the child seat. So that bag that was there, that wasn't in the back seat either. According to her testimony, that bag and that gun were not there. And it's also important to note that she was dropped off at Montrose and Broadway 55 minutes before the officers found him at West End and Central. So a lot of that 55 minutes was spent in transport between one and two places. So there's not a lot of opportunity, based on that evidence, for anything to really happen for those aliens to come down and place the gun in the car. There wasn't time for this. It is a reasonable inference, based on these facts, that this defendant, in between that time, got that gun in that bag and placed them in that back seat and knew they were there. And that's clearly shown by his consciousness of guilt of running away from the car with the second police officer. Now, on the second issue, under the Second Amendment, one thing that really should be clarified in this case, and it's really not clear from the briefs, the people addressed the defendant's challenge here to the constitutionality of the armed individual criminal statute as a facial challenge. But it should be clarified here, because it's not entirely clear from the briefs, whether we are dealing with here is a facial challenge or an as-applied challenge, because they are two different things. And it's important, because they have two different results, and they look at two different things. The facial challenge looks only at the statute itself and does not look at all the facts of the case. It just says, is the statute capable of being applied consistent with the constitution? If yes, then it's constitutional. And Hill v. Cowan, the Illinois Supreme Court case, cited by the people, literally says in there, it's extremely difficult to mount a facial challenge to a statute. And the as-applied statute, the as-applied challenge to a constitutionality of a statute, actually looks at, obviously, how it was applied, the facts of the specific case. But it's important, because it has a different result, which is if you find that as-applied, it was applied unconstitutionally, the statute is still considered presumptively constitutional. It's the application that is then void. But the statute, it's a very different result. In one scenario, the statute is voided. In the other, solely the actions taken under that statute are voided. But the people would argue here today that the as-applied challenge is simply inappropriate here, because in order to do an as-applied challenge, you need to have factual findings. And one of the rights under the Second Amendment say that, well, the interpretations of the Second Amendment is that it allows possession of a gun for lawful purposes. Well, there are no factual findings in this case as to what the purpose was of this defendant possessing that gun. And so without the factual findings of how and why this person possessed this gun, it's impossible to do on review an as-applied review. So all defendant is left with them is a facial challenge to the statute. And really under any challenge to the statute is going to be constitutional under the Second Amendment. And the people, of course, cited Wilson v. Cook County, a recent Third Division case. The reason the people cited that is because that case really took a look at how the Heller and McDonald cases were treated after they came down, how courts were reviewing statutes. And that standard review section in there is very informative because it looks at a Third District case, a Fourth District, Seventh District, Tenth District, and the D.C. Circuit. And in all five of those different courts all looked at Second Amendment challenges to statutes similar to this one. The Seventh District Court was actually looking at possession of a gun by a felon. They were all upheld, but they also came to a consensus on how to deal with these things. And the consensus they came to was that there should be a two-part test. The first part is, does the law itself implicate Second Amendment rights? And then if so, then you go to intermediate scrutiny. And what the people would argue here today is that this statute should be upheld on the first part of that test because this defendant, by virtue of being a felon, does not have Second Amendment rights. And it is clear, there's not just one statement in Heller. I think this is a really important part of this case that should be pointed out because the argument is that, well, the statement in Heller that was repeated in McDonald could be written off as dicta. But the fact, of course, that the U.S. Supreme Court is saying something so emphatically and taking the trouble to repeat it a second time really goes against the argument that it's dicta. But if you look at the actual holding, the end of the case in Heller, this is on 554 U.S. Reporter at page 635, the bottom of 635. It says, in sum, we hold that the district's ban on handgun possession of a home violates the Second Amendment. The next sentence, though, says, assuming that Heller is not disqualified from the exercise of Second Amendment rights, the district must permit him to register for a gun. And that's a really important statement because it's right, one, it's in the holding. So there's no argument that that's dicta. There's no argument whatsoever that that's dicta. And second, it's a clear statement from the U.S. Supreme Court saying that you can be disqualified from your Second Amendment rights. Now, if you look back and you can see in the opinion on page 631, the court clearly says that felon status is a disqualification because the court says, before this court, petitioners have stated that if the handgun ban is struck down or a respondent registers a handgun, he could obtain a license assuming he is not otherwise disqualified. And then the court adds after that quotation, in its own words, by which they apparently mean if he is not a felon. So the court right there defines disqualification of Second Amendment rights means felon. So felons are disqualified from the Second Amendment rights. So under the two-part test enunciated in Wilson v. Cook County and the several Federal Circuit Courts of Appeals, these defendants under the Armed Provisional Criminal Statute are disqualified from the Second Amendment right. And it's important to note as well that this statute really would stand up to any level of scrutiny. And under the intermediate scrutiny standard, you need an important government interest and a substantial relation from the statute to that interest. And Wilson v. Cook County actually said that it's beyond dispute that public safety is an important government interest and really, I mean, there is no other government interest that could be more important. If the government can't provide public safety, it's not going to be a government for very long. So it's the single most important government interest. And this statute is very, very narrowly tailored to that interest. I mean, it's really important to see that not all citizens are banned the right to possess guns under the statute. Not all felons are banned from the right of possessing a gun under the statute. Not all recidivist felons are banned from the right of possessing a gun under the statute. Only recidivist felons of violent crimes and the elevated drug offenses. And, of course, the reason for that is because there's a lot of gun violence in and around the narcotics trafficking. And here in Chicago, that's a pretty well-known fact. The city has hundreds and hundreds of people shot and killed every year, and narcotics trafficking plays a big role in that violence. So it's clear that even if this court did reach intermediate scrutiny, this statute would stand up well. So for those reasons, Your Honor, as well as those stated in the people's brief, we'd ask that you affirm this defendant's conviction. Thank you. How would you address the language that he just pointed out, too, in the Supreme Court holding regarding felons and specifically the last line and then the earlier reference that they're excluded from the protection of the Second Amendment? Or disqualified. Right. So assuming that he's not disqualified. Quite honestly, we don't know. The court was emphatic, equally emphatic, that it wasn't trying to lay out the entire field of Second Amendment jurisprudence with these two cases. They said in Heller that the right to bear arms at least extends to the home for purposes of self-defense. They suggest that you can be disqualified for that protection. Sure. That right. We don't know what standards the Supreme Court would use. And I think that going back to your earlier question about casting doubt on these prohibitions, I think the reason that nothing should be taken to cast doubt on them is that the court never addressed them. It was never before the court. What about all the district court decisions that they have? There have been some that have come out, yes, using various levels of scrutiny. In one case, Chester, they did sort of what I think the state's attorney is talking about, and they remanded for more factual findings. So, I mean, that's one avenue that this court could take. But, again, I think it's important to note that it would be extraordinary to exclude for life a person who has been convicted of a felony in the instance of a court constitutional right. You know, as to the two arguments, one being as applied, you're giving up that argument. You're only looking for a facial. This court could do either, but I think the strongest argument is facial. How can we do either when the defendant here claims he doesn't even know that there was a gun there? So he couldn't be having it for protection, could he, if he didn't know it was there? Well, if this court finds that he had knowledge, then that issue will have been decided against him, and then that issue is before the court. So, but the stronger argument, I think, is the facial challenge, particularly with respect to the portion of the armed habitual criminal statute dealing with- Do you get to do both? I'm sorry? Do you get to have both facial? This court can look at both. But what are you doing? You're the one that filed the brief. What have you outlined here? We made essentially a facial challenge. All right. So you can't raise something that you haven't raised already. Right. And so we're not going to be looking at something that you haven't directed us to. Which is why I think it's a very strong argument, the facial attack on the armed habitual criminal statute, particularly the provision under which Mr. Ross was convicted for having two drug convictions, where those felonies aren't at all linked to violence or the inappropriate use of a firearm. The state- One other point I'd like to make is that the state talked about sort of the violence in the city of Chicago. And in Heller and McDonald, they acknowledged that guns have violent implications. And that's part of the interest balancing that went into the Second Amendment. And so the fact that guns can be used for violent purposes isn't necessarily dispositive of the issue here. And briefly, I'd like to say, with respect to the first argument, the officer's testimony, Officer Seabury, as to the location of the gun, is that it was pushed between the bag and the back seat, with the butt of the gun exposed. And so certainly it's in plain view to the officer who's searching for contraband. But it's not necessarily in complete and total plain view to Mr. Ross, who's driving in the driver's seat and the gun is behind him, with only part of it exposed. So we're to believe that the bag and the gun were put there without him knowing about it? In other words, it was either the tooth fairy or somebody else who did this? No, it doesn't necessarily have to be. We just don't know from the evidence that came out at trial. And again, it's the state's burden to prove knowledge. And the fact that the defendant was the only one in proximity certainly is not sufficient to show knowledge. That much is clear. And so here there's not, from the factors that I've outlined, there's not enough to prove beyond a reasonable doubt that Mr. Ross had that knowledge. All right, I think your time is up. So for these reasons, we would ask that you reverse Mr. Ross's conviction. Thank you. We want to thank both sides. You did an excellent job in your presentation and in your briefs. It was a very interesting case for us to have, and we'll take it under advisement.